UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THE ENERGY GROUP, INC., <br> A MICHIGAN CORPORATION, <br> <br> Plaintiff <br> <br> v. <br> <br> NATIONAL UNION FIRE INSURANCE <br> COMPANY OF PITTSBURGH, PA., <br> <br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT AND REQUEST FOR JURY DEMAND

Plaintiff, The Energy Group, Inc., by counsel, states the following as its Complaint and Request for Jury Demand:

### JURISDICTION AND VENUE

1. The Energy Group, Inc., ("Energy Group") is a Michigan corporation engaged in the business of providing specialized tree trimming services around high voltage utility lines and maintains its principal place of business in Michigan.

2. National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a member company of American International Group, Inc. ("AIG") and provided a General Liability Insurance Policy to Energy Group, a copy of which is attached as Exhibit A.

3. This dispute arises from Defendant's breach of contract and bad faith refusal to fully protect the rights of its insured, The Energy Group, Inc. ("Energy Group") in a lawsuit filed by plaintiffs Nancy H. Vaidik ("M3, Vaidik") and James S. Stankiewicz ("'Mr. Stankiewicz") on March 7, 2022 (the "Vaidik Lawsuit").

1

4. This Court has subject matter jurisdiction as this case involves an amount in controversy in excess of $75,000 and there exists a complete diversity of citizenship among the parties.

5. Venue is proper in this Court because National Union conducts business in this jurisdiction and this case is related to Case No. 2:24-cv-00229-GSL-JEM which is now pending before this Court (the "NIPSCO Lawsuit").

## STATEMENT OF FACTS

### A. BACKGROUND FACTS

6. On or about July 23, 2012, Energy Group entered into General Services Agreement No. CW1891320 with NiSource Corporate Services Company (NIPSCO) (and its entities and respective affiliates), with an effective date of December l2, 2012 (the "GSA"). A copy of the GSA is attached hereto as Exhibit B.

7. Pursuant to GSA, Energy Group provided NIPSCO with vegetation management services.

8. Among other terms the GSA obligated Energy Group—as the "Contractor" to indemnify, defend and hold harmless NIPSCO "from and against all claims, damages, losses, fines, penalties, and expenses, including attorneys' fees, related to Energy Group's vegetation management services. Section 4 of the GSA provides, in relevant part, as follows:

> [t]o the fullest extent permitted by law, Contractor waives any right of contribution and agrees to indemnify, defend and hold harmless Owner (NIPSCO) and its parent company, agents, affiliates and employees (collectively, "indemnitees") from and against all claims, damages, losses, fines, penalties and expenses, including attorneys' fees, related in any way to (i) any breach of this Agreement by Contractor or (ii) Contractor or its Subcontractors or agents performance of the work (collectively "Claims") provided that any such Claims in subsection (a)(ii) above are 'Caused in whole or in part by any negligent act him or omission of contractor, any Subcontractor, or any of its respective direct or indirect employees or agents for whose acts any of them may be liable. Such obligation shall not negate, abridge,

2

or otherwise reduce any other right or obligation of indemnity or contribution in favor of the indemnitees. Such obligation to indemnify, defend and hold harmless shall not be limited in any way by any limitation on the amount or type of damages, compensation, benefits or insurance proceeds payable by, for or to Contractor or anyone directly or indirectly employed by Contractor. The obligations of Contractor under this Agreement shall not extend to the liability of the Indemnitees arising out of the Indemnitees' sole negligence. Contractor shall impose identical indemnification, defense and hold harmless obligations upon all Subcontractors.

9. Section 3(d) of the GSA also required Energy Group to add NIPSCO as an Additional Insured.

10. Energy Group met its obligations under section 3(d) of the GSA by obtaining Energy Group Policy No. 350-69—61, effective June 1, 2021 to June l, 2022 (the "Policy") from National Union which includes endorsement CG 20 10 12 19 titled "Additional Insured - Owners, Lessees or Contractors - Scheduled Person Or Organization" (the "Additional Insured Endorsement"), that provides in relevant part that an additional insured shall include: "[a]ny person or organization whom you become obligated to include as an additional insured as a result of any written contract or agreement you have entered into" and "per the written contract or agreement." (See Exhibit A at p.31).

11. The Policy provided a $2 million Each Occurrence Limit in coverage. (See Exhibit A at p.5).

12. The Policy provides coverage for "those sums that the Insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." (See Exhibit A at p.12).

13. The Policy also states that "[National Union] will have the right and duty to defend the insured against any "suit" seeking those damages." (See Exhibit A at p.12).

14. The Policy also states that "[t]hroughout this policy the words "you: and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (See Exhibit A at p. 12).

15. The Additional Insured Endorsement covers any bodily injury or property damage caused "in whole or in part" by "[Energy Group's] acts or omissions; or [t]he acts or omissions of those acting on [Energy Group's] behalf." (See Exhibit A at p.12).

**B.     THE VAIDIK INJURY AND RESULTING LAWSUIT**

16. On or about June 6, 2021, Nancy H. Vaidik ("Ms. Vaidik") was riding a bicycle when a tree limb overhanging NIPSCO's road right of way fell on her.

17. Ms. Vaidik filed a lawsuit against Energy Group, NIPSCO and others alleging that as a result of the incident she incurred significant medical expenses and pain and suffering, and that Ms. Vaidik would continue to suffer impairment, disfigurement, and the inability to lead a normal life (Vaidik Lawsuit).

18. Specifically, Ms. Vaidik alleged that the tree limb that struck her was dead and that NIPSCO, Energy Group and others were negligent in failing to identify and remove the dead limb before it fell and injured her.

19. Ms. Vaidik's husband also filed a loss of consortium claim.

20. Both Energy Group and NIPSCO tendered defense of the claim to National Union pursuant to the plain language and requirements of the Policy.

21. National Union accepted the tenders under a reservation of rights and retained Christine R. Bond and Ryan J. Schoffelmeer of Kopka Pinkus and Dolan to represent Energy Group.

22. NIPSCO asserted that under the plain terms of the Vaidik Lawsuit, any injuries Ms. Vaidik incurred arose from bodily injury caused, at least in part, by Energy Group's acts or omissions.

23. Importantly, it was alleged that Energy Group was contractually obligated to comply with NIPSCO's Specifications for trimming the tree in question and had failed to do so.

24. Those specifications required Energy Group to trim any tree branches or limb that were within ten feet of any conductor.

25. During the course of the Vaidik Litigation, evidence was produced that suggested the tree limb that fell on Ms. Vaidik was within five (5) feet of the nearest conductor at the time that Energy Group performed its work.

26. Plaintiffs' expert in the Vaidik Litigation, Gregory Booth, P.E., opined that if Energy Group had removed the tree limb when it performed its work in 2014, the injury to Ms. Vaidik would not have occurred.

27. A mediation was scheduled for March of 2024 amongst the parties to settle the Vaidik Litigation.

28. Prior to the mediation, Attorney Christine R. Bond prepared a very detailed analysis of the claim, which analysis concluded that the exposure of Energy Group alone was approximately three million dollars, and she recommended that National Union agree to contribute its full policy limits of two million dollars towards a settlement package.

29. On or about February 27, 2024, NIPSCO requested via email that National Union make available all of its coverage limits to resolve this matter on behalf of NIPSCO and Energy Group.

30. On or about February 27, 2024, NIPSCO provided a draft complaint to Energy Group and National Union that threatened litigation against both of them if National Union did not tender the policy limits of two million dollars to the claim.

31. On or about March 8, 2024, National Union informed NIPSCO that it would not tender Energy Group's Policy limits in settlement of the claim.

32. On March 11, 2024, National Union and NIPSCO attended a mediation with Ms. Vaidik's counsel to try to settle the case.

33. Assigned counsel by AIG to represent Energy Group from Kopka Pinkus attended, but Energy Group was not invited to attend.

34. Late in the day on March 11, 2024, counsel from Kopka Pinkus called Matt Donnellon from Energy Group and asked if Energy Group would make a monetary contribution to the Vaidik settlement. Energy Group declined as it had insurance from three different carriers that collectively provided it with more than six million dollars in coverage.

35. Over the objection of NIPSCO, who was the additional insured under the Policy, AIG proceeded to settle the case on Energy Group's behalf by paying one million dollars, and refused to tender the remaining one million dollars in coverage on NIPSCO's behalf.

36. NIPSCO in turn agreed to pay two million, seven hundred thousand dollars, towards the Vaidik settlement, with the full understanding of National Union and counsel assigned to Energy Group by National Union, that it would sue National Union and Energy Group to recoup such payment.

37. Other parties contributed additional monies bringing the entire settlement to over seven million dollars.

38. Prior to closing the mediation, a settlement agreement was prepared that was signed by Ms. Vaidik and her husband, assigned counsel for Energy Group, counsel for NIPSCO and counsel for a third-party defendant that included a release of Energy Group from claims by the plaintiffs, but specifically excluded any release of Energy Group by NIPSCO.

39. Energy Group was not contacted about the terms of the release before it was signed and was given no opportunity to reject the settlement which did not release it from claims of NIPSCO, which National Union and counsel assigned to Energy Group by National Union were well aware of.

### C. THE NIPSCO LAWSUIT

40. As a result of National Union's failure to provide its policy limits to settle the Vaidik Lawsuit, and the resulting obligation on NIPSCO to pay two million seven hundred thousand dollars to settle the claims asserted against it, NIPSCO has followed through and filed the NIPSCO Lawsuit against Energy Group, National Union, and Energy Group's excess carriers.

41. Energy Group tendered defense of the NIPSCO Lawsuit to National Union who has accepted the obligation to defend. However, the defense was tendered with a reservation of rights which leaves open the possibility that National Union will later deny coverage of any potential loss that Energy Group may suffer in the NIPSCO Litigation.

42. The reservation of rights letter issued in this regard fails to identify any specific facts that would negate a duty to provide coverage, but instead rests upon an unsupported concern that future facts may arise during the course of the NIPSCO Lawsuit that would justify a denial of coverage. (The reservation of rights letter was issued and revised multiple times. The most current reservation of rights letter that National Union is relying on is attached as Exhibit C).

43. Such a general statement could be raised in every single lawsuit in which a demand for defense and coverage is asserted against an insured, but certainly, reservation of rights letters are not issued or allowable in all such cases.

44. As a result of the reservation of rights letter, Energy Group is now forced to carry a contingent liability of two million seven hundred thousand dollars on its books which provides significant limits on its ability to obtain and utilize basic financing for its day-to-day operations as well as calls into question its financial stability in other transactions.

45. Demand has been placed upon National Union to revoke the reservation of rights letter but it has refused to do so.

**Count I – Declaratory Judgment – Breach of Contract**

46. Energy Group incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

47. The Policy is a valid and legally enforceable contract.

48. The Policy named NIPSCO an Additional Insured under the Policy.

49. The Policy also required National Union to defend and cover claims against Energy Group that Energy Group contractually assumed in the GSA as they related to a covered event.

50. Energy Group paid all applicable premiums owed and otherwise has fully performed its contractual obligations under the Policy.

51. Pursuant to the terms of the Policy, National Union had a duty to both defend NIPSCO against its negligent acts as an additional insured in the Vaidik Lawsuit as well as to indemnify NIPSCO for any damages it sustained due to Energy Group's negligence as set forth under the terms of the "indemnity" provision of the GSA.

52. Pursuant to the terms of the Policy, National Union had an obligation, up to its limits, to pay for and cover the settlement amount that both Energy Group and NIPSCO paid in connection with the Vaidik Lawsuit that fell within the scope of coverage provided under the Policy.

53. Energy Group is now being sued by NIPSCO for failure to indemnify it for the Vaidik claim under the terms of the GSA.

54. As a result, there is an actual justiciable controversy between Energy Group and National Union regarding their rights, legal obligations, and enforcement of the terms of the Policy.

Wherefore, Energy Group seeks a judicial determination that National Union is obligated to defend and indemnify Energy Group with respect to any damages awarded to NIPSCO and against Energy Group, up to the limits of the Policy, as related to the claims asserted against Energy Group in the NIPSCO Lawsuit.

**COUNT II: BAD FAITH AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

55. Energy Group incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

56. National Union owes Energy Group, as its insured, a duty of good faith and fair dealing in carrying out its obligations under the Policy.

57. The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (l) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

58. Under the terms of the Policy, National Union had a duty to defend and cover both Energy Group and NIPSCO in the Vaidik Lawsuit, up to the limits of the Policy.

59. Prior to the March 11, 2024, mediation, counsel assigned by National Union to defend Energy Group advised Energy Group and National Union that it believed Energy Group's exposure alone in the Vaidik Lawsuit was approximately three million dollars, without also including the exposure of NIPSCO to the same claims.

60. Additionally, NIPSCO advised National Union of its demand that National Union indemnify it up to the limits of the Policy and further advised, that it would sue Energy Group, National Union, and Energy Group's excess insurers if National Union did not tender its policy limits in settlement of the Vaidik Lawsuit.

61. In denial of the advice of counsel hired by National Union to represent Energy Group, National Union attended the March 11, 2024, mediation but refused to provide any amount more than one million dollars of coverage to settle the Vaidik Lawsuit on behalf of Energy Group and flatly refused to pay a single dollar of coverage on behalf of its additional insured, NIPSCO, or on behalf of NIPSCO under the contractual indemnity clause contained in the GSA.

62. In light of all known facts, National Union's failure to tender policy limits on behalf of Energy Group, and failure to defend and indemnify NIPSCO by making available the full limits provided for in the Policy was in bad faith.

63. National Union's unfounded refusal to pay Policy proceeds, willful blindness to relevant extrinsic evidence that was made available in the Vaidik Lawsuit, and intentional disregard of the advice of counsel retained by National Union to represent Energy Group in the Vaidik Lawsuit, are breaches of National Union's obligation of good faith and fair dealing with respect to its contractual obligations.

Wherefore, Energy Group seeks judgment against National Union in an amount equal to all damages it incurs, if any, in the NIPSCO Lawsuit, including reimbursement of all costs and attorney's fees awarded, as well as an award of punitive damages.

Respectfully submitted,

*/s/ Mark M. Holdridge*
Mark M. Holdridge, Atty. # 26413-49
Georgianna Q. Tutwiler, Atty. #32181-49
HUME SMITH GEDDES GREEN & SIMMONS, LLP
54 Monument Circle, 4th Floor
Indianapolis, IN  46204
(317)632-4402
(317)632-5595 (Facsimile)
mholdridge@humesmith.com
gquinn@humesmith.com
*Attorneys for Plaintiff, The Energy Group*

## JURY TRIAL REQUEST

Comes now Plaintiff, The Energy Group, by counsel, in accordance with Fed. R. Civ. P. 38(b), and requests a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Mark M. Holdridge*
Mark M. Holdridge, Atty. # 26413-49
Georgianna Q. Tutwiler, Atty. #32181-49
HUME SMITH GEDDES GREEN & SIMMONS, LLP
54 Monument Circle, 4th Floor

        Indianapolis, IN  46204
        (317)632-4402
        (317)632-5595 (Facsimile)
        mholdridge@humesmith.com
        gquinn@humesmith.com
        *Attorneys for Plaintiff, The Energy Group*